IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>   v.<br><br>MICHAEL STEVEN BANUELOS,<br><br>      Defendant. | Case No. CR 12-00561 WHA<br><br>**ORDER DETAINING DEFENDANT** |

     Defendant Michael Steven Banuelos is charged in a 13-count indictment with wire fraud and money laundering. The United States moved for detention and following a hearing on September 17, 2012 and September 18, 2012 the Court ordered Mr. Banuelos detained. (Dkt. Nos. 10, 12.) In particular, the Court found that the government had shown by clear and convincing evidence that Defendant poses an economic danger to the community and that, under 18 U.S.C. § 3142(e), no condition or combination of conditions will reasonably assure the safety of the public. At Defendant's request, the Court nonetheless continued the detention hearing to October 25, 2012 to give Defendant the opportunity to review discovery provided by the government, further respond to the government's proffer, and propose sufficient conditions of release. After considering the arguments made on October 25, 2012, and the factors set forth in 18 U.S.C. § 3142(g), the Court finds that the government has shown by clear and convincing

evidence that no condition or combination of conditions will reasonably assure the safety of others.

The Court finds that Defendant poses an economic danger, that is, that he is likely to continue engaging in criminal fraud if released pending trial. *See United States v. Reynolds,* 956 F.2d 192 (9th Cir. 1992) ("danger may, at least in some cases, encompass pecuniary or economic harm"). The Court's finding is based on the proffer made by the government at the hearings on September 17, 18 and October 25, 2012, including the facts set forth below.

First, in 1997, while a Los Angeles County Sheriff, Defendant was convicted of having defrauded his fellow Sheriffs of approximately $100,000 and placed on three years' probation.

Second, since at least early 2008, and perhaps earlier, Defendant has engaged in pervasive fraud to support a lavish lifestyle. He has been indicted for stealing more than $2 million dollars by convincing others to invest with him by falsely claiming that he was involved as a deal maker in the music industry. Rather than investing the money, he used it on personal expenses, including fancy cars and clothes and expensive homes.  In June of 2011 he initiated a different scheme in which he lured investors to provide him more than $200,000 over time for different fictional business ventures.  In 2012 he moved to Chicago and falsely told others that he was moving because he had a new high ranking position with a music company. He rented a $7000 per month Chicago apartment even though he has represented to the Court under oath that his income from his brother's business was approximately $3000 per month; his lifestyle was dependent upon his relentless fraudulent activities. In order to defraud another victim, he took an innocent attorney's e-mail and modified it to make it look as though a fraudulent investment he was soliciting was legitimate. Further, he involved his then-wife in the scheme by having her forward the fabricated email. He convinced his landlord to wire him $170,000 based on the false representation that Defendant needed the money to obtain a loan to purchase the landlord's home.  Defendant did not purchase the home and never returned the money.  It is unclear how Defendant supported himself (and his family) from 1998 through 2008, other than that for a few years he was a stay-at-home father.

Third, Defendant appears to have continued his fraudulent activities even after he was jailed on the charges in the indictment. While in jail he had his brother contact one of his victims by telephone to seek additional monies. He directed his brother to offer to secure any "loan" with a Maserati which Defendant did not own and therefore could not legally offer as collateral.

The Court finds that the conditions of release Defendant proposes are not sufficient to assure that Defendant will not continue to engage in the fraud that has permeated his life. While Defendant's brother has offered to sign an unsecured bond, he does not have any equity in any properties and has not offered any evidence of any additional assets. Further, and more importantly, Defendant has used his brother to facilitate his frauds, including using his brother's bank account, his business, and, as explained above, having him make telephone calls to facilitate continued frauds. Defendant's brother is simply not an appropriate surety.

Similarly, while his father and stepmother have offered to sign an unsecured bond and to serve as custodians in Los Angeles, where Defendant has not lived for many years, they are unwilling to sign a bond secured by the equity in their home and do not otherwise have any assets. Further, according to the government's proffer, in order to facilitate one of his frauds Defendant offered to secure a loan with his father's retirement account, thus further demonstrating a willingness to involve his family in his alleged crimes. Electronic surveillance will not reasonably assure that Defendant is not using his considerable personable skills to perpetrate further frauds.

Accordingly, Defendant is ordered detained pending trial.

**IT IS SO ORDERED.**

Dated: October 26, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE